1

2

3

4

5

6

7

8                            **UNITED STATES DISTRICT COURT**

9                                    **DISTRICT OF NEVADA**

10                                              * * *

11    Justine A. Bellinsky,                          Case No. 2:20-cv-01734-BNW

12                          Plaintiff,
                                                     **ORDER re ECF Nos. 17 and 18**
13         v.

14    Kilolo Kijakazi,*

15                          Defendant.

16

17         This case involves review of an administrative action by the Commissioner of Social

18    Security denying Plaintiff[1] Justine A. Bellinsky's application for disability benefits and

19    supplemental security income under Title XVI of the Social Security Act. The Court reviewed

20    Plaintiff's motion to remand (ECF No. 17), filed May 25, 2021, and the Commissioner's

21    countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos. 18, 19), filed

22    June 21, 2021. Plaintiff replied on July 12, 2021. ECF No. 20.

23         The parties consented to the case being heard by a magistrate judge in accordance with 28

24    U.S.C. § 636(c) on September 18, 2020. ECF No. 3. This matter was then assigned to the

25    undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id*.

26    _____

27         * Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule
      of Civil Procedure 25(d).
            [1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for
28    purposes of this Order.

1

## I.      BACKGROUND

2

### 1.      Procedural History

3          On February 2, 2017, Plaintiff applied for supplemental security income under Title XVI

4    of the Act, alleging an onset date of February 1, 2008.[2] ECF No. 15-1[3] at 168–78. Her claim was

5    denied initially and on reconsideration. *Id*. at 97–100; 104–09.

6          A hearing was held before an Administrative Law Judge ("ALJ") on October 3, 2019,

7    where the ALJ heard testimony from vocational expert Erick Davis. *Id*. at 46–62. On December 5,

8    2019, ALJ Christopher R. Daniels issued a decision finding that Plaintiff was not disabled. *Id*. at

9    21–41. The ALJ's decision became the Commissioner's final decision when the Appeals Council

10   denied review on July 20, 2020. *Id*. at 6–11. Plaintiff, on September 18, 2020, timely commenced

11   this action for judicial review under 42 U.S.C. § 405(g). *See* Compl. (ECF No. 1).

12   ## II.     DISCUSSION

13   ### 1.      Standard of Review

14         Administrative decisions in Social Security disability benefits cases are reviewed under 42

15   U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

16   provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

17   made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

18   obtain a review of such decision by a civil action . . . brought in the district court of the United

19   States for the judicial district in which the plaintiff resides." The court may enter "upon the

20   pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

21   decision of the Commissioner of Social Security, with or without remanding the cause for a

22   rehearing." 42 U.S.C. § 405(g).

23         The Commissioner's findings of fact are conclusive if supported by substantial evidence.

24   *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

25

26         [2] The ALJ decision provides an application date of February 6, 2017 and an alleged onset date of February
     1, 2008. ECF No. 15-1 at 24.

27
           [3] ECF No. 15 refers to the Administrative Record in this matter which, due to COVID-19, was electronically
28   filed. Notice of Electronic Filing (ECF No. 15). All citations to the Administrative Record will use the CM/ECF page
     numbers.

1     findings may be set aside if they are based on legal error or not supported by substantial evidence.

2     *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

3     278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

4     mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

5     might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

6     Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

7     whether the Commissioner's findings are supported by substantial evidence, the court "must

8     review the administrative record as a whole, weighing both the evidence that supports and the

9     evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

10    720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

11            Under the substantial evidence test, findings must be upheld if supported by inferences

12    reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

13    When the evidence will support more than one rational interpretation, the court must defer to the

14    Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

15    *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

16    before the court is not whether the Commissioner could reasonably have reached a different

17    conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

18    the ALJ to make specific findings so that the court does not speculate as to the basis of the

19    findings when determining if the Commissioner's decision is supported by substantial evidence.

20    Mere cursory findings of fact without explicit statements as to what portions of the evidence were

21    accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

22    The ALJ's findings "should be as comprehensive and analytical as feasible, and where

23    appropriate, should include a statement of subordinate factual foundations on which the ultimate

24    factual conclusions are based." *Id.*

25            **2.      Disability Evaluation Process**

26            The individual seeking disability benefits has the initial burden of proving disability.

27    *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

28    demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

1    determinable physical or mental impairment which can be expected . . . to last for a continuous

2    period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

3    must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

4    § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

5    shifts to the Commissioner to show that the individual can perform other substantial gainful work

6    that exists in the national economy. *Reddick*, 157 F.3d at 721.

7         The ALJ follows a five-step sequential evaluation process in determining whether an

8    individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

9    at any step the ALJ determines that he can make a finding of disability or non-disability, a

10   determination will be made, and no further evaluation is required. *See* 20 C.F.R.

11   § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

12   determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R.

13   § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

14   doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If

15   the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not

16   engaged in SGA, then the analysis proceeds to step two.

17        Step two addresses whether the individual has a medically determinable impairment that

18   is severe or a combination of impairments that significantly limits her from performing basic

19   work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe

20   when medical and other evidence establish only a slight abnormality or a combination of slight

21   abnormalities that would have no more than a minimal effect on the individual's ability to work.

22   *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[4] If the

23   individual does not have a severe medically determinable impairment or combination of

24   impairments, then a finding of not disabled is made. If the individual has a severe medically

25   determinable impairment or combination of impairments, then the analysis proceeds to step three.

26

27        [4] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc.
     Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some
     deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224
28   (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

1    Step three requires the ALJ to determine whether the individual's impairments or

2   combination of impairments meets or medically equals the criteria of an impairment listed in 20

3   C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If

4   the individual's impairment or combination of impairments meets or equals the criteria of a

5   listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.

6   20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not

7   meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds

8   to step four.

9    But before moving to step four, the ALJ must first determine the individual's residual

10   functional capacity ("RFC"), which is a function-by-function assessment of the individual's

11   ability to do physical and mental work-related activities on a sustained basis despite limitations

12   from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the

13   ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the

14   symptoms can reasonably be accepted as consistent with the objective medical evidence and other

15   evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements

16   about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

17   substantiated by objective medical evidence, the ALJ must make a finding on the credibility of

18   the individual's statements based on a consideration of the entire case record. The ALJ must also

19   consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and

20   SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

21    Step four requires the ALJ to determine whether the individual has the RFC to perform

22   her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as

23   the individual actually performed it or as it is generally performed in the national economy within

24   the last 15 years. In addition, the work must have lasted long enough for the individual to learn

25   the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the

26   RFC to perform her past work, then a finding of not disabled is made. If the individual is unable

27   to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

28

1    The fifth and final step requires the ALJ to determine whether the individual is able to do

2    any other work considering her RFC, age, education, and work experience. 20 C.F.R.

3    § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although

4    the individual generally continues to have the burden of proving disability at this step, a limited

5    burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

6    responsible for providing evidence demonstrating that other work exists in significant numbers in

7    the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

8    Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

9    § 416.920. ECF No. 15-1 at 25–41.

10    At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

11    since the alleged onset date of February 6, 2017. *Id*. at 26.

12    At step two, the ALJ found that Plaintiff had the following medically determinable

13    "severe" impairments: anxiety, bipolar disorder, and fibromyalgia. *Id*.

14    At step three, the ALJ found that Plaintiff did not have an impairment or combination of

15    impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,

16    Appendix 1, specifically citing to 12.04, 12.06, and 14.09. *Id*. at 26–27.

17    Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform

18    "light" work with the following exceptions: She is able to lift and carry no more than ten pounds,

19    frequently, and twenty pounds, occasionally; she is able to sit for six hours, cumulatively, in an

20    eight-hour workday; she is able to stand and/or walk for six hours, cumulatively, in an eight-hour

21    workday; she is able to perform simple, routine, repetitive tasks; she is able to tolerate brief,

22    superficial contact with others; and she is able to adapt to routine work changes. *Id*. at 27.

23    At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a

24    graphic designer because "it exceeds her mental residual functional capacity." *Id*. at 40.

25    At step five, the ALJ found that Plaintiff could perform other jobs that exist in significant

26    numbers in the national economy. *Id*. at 40–41. Specifically, he found that Plaintiff can work as a

27    locker room attendant, mail clerk, and ticket taker. *Id*. at 41. The ALJ then concluded that

28

1    Plaintiff was not under a disability at any time from February 6, 2017, through the date of his

2    decision. *Id*.

3          **3.     Analysis**

4               **a. Whether substantial evidence supports the ALJ's decision at step**
     **five of the sequential evaluation process**

5

6                    **i. The ALJ's decision**

7          At step five of the sequential evaluation process, the ALJ found that Plaintiff could

     perform work as a locker room attendant, mail clerk, and ticket taker. ECF No. 15-1 at 40–41. He

8    based this determination on testimony from the vocational expert ("VE"), the Dictionary of

9    Occupational Titles ("DOT"), and Plaintiff's RFC, age, education, and work experience, and

10   found that,

11

12          [a]lthough a portion of the vocational expert's testimony is inconsistent with the
            information contained in the Dictionary of Occupational Titles (DOT), there is a
13          reasonable explanation for the discrepancy. He testified with respect to lying down and
            absenteeism in the workday, based on his professional knowledge, experience, and
14          employer interviews. The undersigned finds that the vocational expert's testimony is
            otherwise consistent with the DOT and its companion publication, Selected
15          Characteristics of Occupations."

16   *Id*. at 41.

17                    **ii. The parties' arguments**

18          Plaintiff moves to remand, arguing that the ALJ did not meet his burden at step five of the

19   sequential evaluation process, as the jobs that the ALJ found Plaintiff could perform "do not exist

20   in significant numbers." ECF No. 17 at 5. As a preliminary matter, Plaintiff first contends that

21   because "the rebuttal evidence was submitted to and considered by the Appeals Council, the

22   vocation issues have not been waived." ECF No. 17 at 9. She then asserts that the three jobs that

23   the ALJ determined Plaintiff could do—locker room attendant, mail clerk, and ticket taker—

24   exceed the amount of contact with people contemplated by Plaintiff's RFC limitation ("tolerate

25   brief, superficial contact with others"). *Id*. Plaintiff relies on data from the Occupational Outlook

26   Handbook ("OOH") and O*NET to support her argument. *Id*. at 6–8.

27

28

1    The Commissioner counters that Plaintiff waived this argument by not raising it before the

2    ALJ. ECF No. 18 at 7. Although she concedes that Plaintiff raised this argument "for the first

3    time to the Appeals Council[,]" she argues that "raising the vocational issues here for the first

4    time to the Appeals Council did not preserve the issue for judicial review under existing Circuit

5    precedent . . . ." *Id.* at 7, 10. She further argues that even if the Court were to find that Plaintiff

6    had not waived this argument, the Court should, nonetheless, find that substantial evidence

7    supports the ALJ's step-five findings. *Id*. at 11, 14. According to the Commissioner, Plaintiff's

8    challenges to the job data rely on O*NET, which is not a source of job information that the ALJ

9    can take administrative of, though she concedes that Plaintiff's other source—the Occupational

10   Outlook Handbook—qualifies as such a source. *Id*. at 11.

11       Plaintiff replies that while challenging a vocational expert's findings "in court is too

12   late[,]" doing so before the Appeals Council is "permitted." ECF No. 20 at 3.

13                       **iii. Whether Plaintiff waived the argument that contrary to the**
     **VE's testimony, there were insufficient numbers of a particular job in the economy**
14

15       Before addressing Plaintiff's argument on the merits, the Court first must determine

16   whether, as the Commissioner argues, Plaintiff waived this argument.

17       In *Shaibi v. Berryhill*, the Ninth Circuit held that "a claimant must, at a minimum, raise

18   the issue of the accuracy of the expert's estimates at *some point during the administrative*

19   *proceedings* to preserve the challenge on appeal in federal district court." 883 F.3d 1102, 1103

20   (9th Cir. 2017) (emphasis added).[5] As the appellate court repeatedly emphasized, the plaintiff in

21   *Shaibi* did not challenge the accuracy of the vocational expert's findings before *either* the ALJ *or*

22   the Appeals Council. *Id*. at 1108–10. Rather, Plaintiff raised this argument for the *first* time on

23   appeal in federal district court. *Id*. Accordingly, the facts from *Shaibi* are different from those

24   present in the instant case.

25       Here, Plaintiff raised her challenge to the VE's findings and the ALJ's adoption of these

26   findings before the Appeals Council and, thus, raised the issue "at some point during the

27

28       [5] Notably, the *Shaibi* court used the more expansive language of "administrative *proceedings*" rather than
     the more limiting language of requiring a claimant to raise an issue before *only* the ALJ in order to avoid forfeiture.

1   administrative proceedings." *See* ECF No. 15-1 at 310–36. Specifically, the Court notes that

2   Plaintiff's brief to the Appeals Council addressed the arguments Plaintiff now raises.

3   *Compare id. with* ECF No. 17 at 5–9.

4           Additionally, the Appeals Council considered and made part of the administrative record

5   Plaintiff's argument and her supporting evidence. *See id.* at 6 ("We considered the reasons and

6   exhibited them on the enclosed Order of the Appeals Council."), 9 (enumerates the documents

7   exhibited by the Appeals Council).

8           Accordingly, the Court finds that Plaintiff, by raising the issue to the Appeals Council

9   during the administrative proceedings, did not waive this argument.[6] *See Shaibi*, 883 F.3d at 1109

10  ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers

11  [based on an alleged conflict with alternative job numbers obtained from the County Business

12  Patterns or the Occupational Outlook Handbook] *during administrative proceedings before the*

13  *agency*, the claimant forfeits such a challenge on appeal, at least when that claimant is represented

14  by counsel.") (emphasis added); *see also Shawn P. v. Kijakazi*, No. 20CV1054-MSB, 2021 WL

15  4460646, at *10 (S.D. Cal. Sept. 29, 2021) ("[T]his Court finds that to the extent Plaintiff

16  submitted his arguments and evidence to the Appeals Council, he has not waived his jobs-

17  numbers arguments."); *see also Gonzalez v. Saul*, 833 F. App'x 464, 465 (9th Cir. 2021) (citing

18  *Shaibi*, 883 F.3d at 1109) ("Failure to raise the claim before either the ALJ or the Appeals

19  Council results in forfeiture of the argument.").[7]

20  //

21

22          [6] This is so even though Plaintiff was represented by the same counsel at the ALJ hearing and did not
    challenge the VE's findings before the ALJ or even question the VE on his findings. *See Shaibi*, 883 F.3d at 1109.

23          [7] There are a number of other holdings in this district that support the Court's finding that a plaintiff does
    not waive or forfeit the presented issue if she—at the least—first presented it to the Appeals Council. *See, e.g.,*
24  *Albritten v. Berryhill,* No. CV 17-0925-JPR, 2018 WL 3032860, at *3 (C.D. Cal. June 14, 2018) (citing *Lamear v.
    Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017)) ("Issues raised to the Appeals Council but not to the ALJ are not
25  forfeited."); *Ross v. Comm'r Soc. Sec. Admin.,* No. 6:16-cv-00903-AA, 2018 WL 263639, at *2 (D. Or. Jan 2, 2018)
    ("*Lamear* stands for the proposition that the failure to raise an issue at the hearing can be remedied by raising it to the
26  Appeals Council."). The Court will further note that the *Meanel* holding to which the Commissioner cites as authority
    to argue that Plaintiff forfeited her argument by not raising it before the ALJ also provides that forfeiture or waiver
27  will be excused "when necessary to avoid a manifest injustice." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir.
    1999). Because the Court finds that substantial evidence does not support the ALJ's step-five finding, holding that
28  Plaintiff waived her argument on an alleged technicality (i.e., by only presenting it to the Appeals Council) would
    amount to a manifest injustice.

**iv. Whether substantial evidence supports the ALJ's step-five findings**

Plaintiff's only argument for remand is that the ALJ erred at step five. ECF No. 17 at 5. According to Plaintiff, the alternate jobs the ALJ identified that she could perform do not exist in significant numbers because each of these three positions require more than brief, superficial contact with others. *Id*. at 5–7.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work despite her identified limitations, and that (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012); *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Circ. 2015). While the Ninth Circuit has not established a minimum or bright-line number of jobs that constitutes a "significant" number, it did hold in *Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 528–29 (9th Cir. 2014) that 25,000 jobs in the national economy, while a close call, amounts to a significant number of jobs. Finally, the ALJ's step-five finding, like all findings under review by the district court, must be supported by substantial evidence in the overall record to be affirmed. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

As discussed earlier, Plaintiff appealed the ALJ's decision to the Appeals Council, arguing that the ALJ "failed to sustain his burden at step five of the sequential evaluation." ECF No. 15-1 at 311. Plaintiff made similar arguments in both her brief to the Appeals Council and in the instant motion to remand, arguing that she is unable to perform the three jobs identified by the vocational expert (i.e., locker room attendant, mail clerk, and ticket taker) because her RFC limits her to "brief, superficial contact with others" and these identified jobs require more contact than permitted as evidenced by OOH and O*NET data. *Id*.; *see also* ECF No. 17 at 5–8.

As an initial matter, the district court must consider evidence that the Appeals Council made part of the administrative record. *See Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citation omitted) ("[W]e hold that when the Appeals Council

1    considers new evidence in deciding whether to review a decision of the ALJ, that evidence

2    becomes part of the administrative record, which the district court must consider when reviewing

3    the Commissioner's final decision for substantial evidence."). Accordingly, this Court has

4    considered the OOH and O*NET data that Plaintiff submitted to the Appeals Council in disputing

5    the ALJ's step-five finding because the Appeals Council made this evidence part of the

6    administrative record. *See* ECF No. 15-1 at 6 ("We considered the reasons and exhibited them on

7    the enclosed Order of the Appeals Council."), 9 (list of documents exhibited by the Appeals

8    Council).

9            The Court now turns to whether the Agency should have resolved the conflict between the

10   VE's testimony and the OOH and O*NET data.

11           The Regulations provide that when the Social Security Administration "determine[s] that

12   unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers

13   either in the region where [the claimant] live[s] or in several regions of the country), [the Agency]

14   will take administrative notice of reliable job information available from various governmental

15   and other publications." 20 C.F.R. § 404.1566(d). The Regulations provide some—though not

16   all—examples of publications of which the Agency will take administrative notice. *Id.* ("For

17   example, we will take notice of—*Dictionary of Occupational Titles*, published by the Department

18   of Labor; *County Business Patterns*, published by the Bureau of the Census; *Census Reports*, also

19   published by the Bureau of the Census; *Occupational Analyses*, prepared for the Social Security

20   Administration by various State employment agencies; and *Occupational Outlook Handbook*,

21   published by the Bureau of Labor Statistics.").

22           The plain language of the Regulations is instructive for several reasons. First, it makes

23   clear that the Agency will take administrative notice of "reliable" job information. *See id.* Second,

24   it indicates that the enumerated sources of reliable job information are not an exclusive list but,

25   rather, simply a few examples of the types of publications of which the Agency will take

26   administrative notice. *See id.* ("*For example*, we will take notice of . . . .) (emphasis added). And

27   finally, it reveals that the sources of reliable job information are not limited to governmental

28   publications. *See id.* ("various governmental and *other* publications") (emphasis added).

1    Here, Plaintiff presented evidence to the Appeals Council, which the Appeals Council

2    made part of the administrative record, suggesting that 97 percent of the 136,400[8] nationally

3    available ticket taker jobs, 91 percent of the 90,100[9] nationally available mail clerk jobs, and 91

4    percent of the 15,500[10] nationally available locker room attendant jobs likely exceed her RFC

5    limitation of having "brief, superficial contact with others." ECF No. 17 at 6-7, ECF No. 15-1 at

6    27. This is because, according to O*NET data, each of these jobs require "contact with others

7    *constantly* or *most of the time*." ECF No. 17 at 6–7 (emphasis added). The ALJ, however, found

8    that Plaintiff was limited to only *brief* and superficial contact with others. ECF No. 15-1 at 27.

9    As outlined above, the Regulations provide that the Agency will take administrative notice

10   of enumerated and non-enumerated governmental and other publications that provide "reliable

11   job information." 20 C.F.R. § 404.1566(d). One of these enumerated publications is the

12   *Occupational Outlook Handbook* ("OOH"), which Plaintiff relies upon to provide the number of

13   nationally available jobs for each of the three jobs that the ALJ found that she could perform.[11]

14   The other source that Plaintiff relies on—the O*NET—is not an enumerated source but is

15   one that would qualify as a *governmental* publication of *reliable* job information. As Plaintiff

16   explains, the O*NET is sponsored by the U.S. Department of Labor's Employment & Training

17   Administration, which is the same governmental entity that sponsored the DOT. ECF No. 17 at 8.

18

19   [8] Plaintiff relies on the *Occupational Outlook Handbook (*"OOH") in determining how many nationally
     available ticket taker jobs there are. According to the OOH, the 136,400 figure includes ushers, lobby attendants, and
20   ticket takers. Of note, at the hearing before the ALJ, the VE testified that there are 84,000 nationally available ticket
     taker jobs. ECF No. 15-1 at 60.

21   [9] Plaintiff relies on the OOH in determining how many nationally available mail clerk jobs there are.
     According to the OOH, the 90,100 figure includes mail clerks and mail machine operators but excludes post service
22   positions. Of note, at the hearing before the ALJ, the VE testified that there are 74,000 nationally available mail clerk
     jobs. ECF No. 15-1 at 60.

23   [10] Plaintiff relies on the OOH in determining how many nationally available locker room attendant jobs
     there are. According to the OOH, the 18,500 figure includes locker room, coatroom, and dressing room attendants.
24   Of note, at the hearing before the ALJ, the VE testified that there are 20,000 nationally available locker room
     attendant jobs. ECF No. 15-1 at 60. Furthermore, the Court recognizes that the number of nationally available locker
25   room attendant jobs may not constitute a "significant" number, as the figures provided by both the VE and the OOH
     indicate nationally available jobs that are at least 5,000 fewer than the 25,000 jobs that the Ninth Circuit held
26   constituted a "significant" number despite being a "close call[.]" *Gutierrez v. Colvin*, 740 F.3d 519, 529 (9th Cir.
     2014).

27   [11] Of note, the OOH figures are larger for two of the three jobs. This means that, under the OOH, the number
     of nationally available ticket taker and mail clerk positions is higher than the figures presented by the VE and relied
28   upon by the ALJ in his step-five findings. The Court raises this point to show that even when relying on the higher,
     OOH figures, the ALJ's step-five finding is not supported by substantial evidence, as discussed within this Order.

1    And, as Plaintiff further notes, the website for ALJs (not just those presiding over Social Security

2    cases) provides the following advice: "The O*Net is now the primary source of occupational

3    information . . . . **Thus, if you are looking for current occupational information you should**

4    **use the O*Net**." *Id.* (citing U.S. Department of Labor, Dictionary of Occupational Titles – Fourth

5    Edition, Revised 1991, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT) (bolded

6    language in original).

7         The evidence that Plaintiff submitted to the Appeals Council indicates that there are fewer

8    than 14,000 jobs nationally that she could perform. This is because, when relying on the OOH

9    and O*NET data and Plaintiff's RFC limitation of having only brief and superficial contact with

10   others, there are only 3,692 ticket taker jobs, 8,109 mail clerk jobs, and 1,665 locker room

11   attendant jobs nationally available that do not require interacting with others "constantly or most

12   of the time." Importantly, because the Agency is required to take administrative notice of OOH

13   data and other reliable job information available from various governmental and other

14   publications like the O*NET, it should have resolved the conflict between data from these sources

15   and the VE's testimony. *See* 20 C.F.R. § 404.1566(d); *see also Harris v. Berryhill*, No. 5:17-CV-

16   02204-SHK, 2018 WL 3493778, at *6 (C.D. Cal. July 20, 2018).

17        Therefore, on this record, this Court finds that remand is necessary, as the ALJ's step-five

18   finding is not supported by substantial evidence. *See Harris*, 2018 WL 3493778, at *6.

19        Finally, the Court will briefly address other district court cases where the courts have held

20   that the ALJ is not bound to *sua sponte* resolve conflicts between the VE's testimony and

21   databases like the OOH or O*NET, as this is a key argument raised by the Commissioner.[12]

22        In many of these cases, the district courts hold that the plaintiff failed to cite any authority

23   to support that the ALJ must *sua sponte* resolve conflicts between the VE's testimony and

24   databases like the OOH or O*NET. *See, e.g., Palomino v. Colvin*, 2015 WL 2409881, at *6 (C.D.

25

26   ───────────

     [12] The Commissioner also argues that a recent Ninth Circuit case "forecloses" Plaintiff's argument. ECF No.
     18 at 13 (citing *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2021), *cert. denied sub nom. Terry v. Kijakazi,* No. 21-665,
     2022 WL 89345 (U.S. Jan. 10, 2022)). While the Commissioner argues that the facts in *Terry* are similar to those in
27   this case, the Court disagrees. This is because the plaintiff in *Terry* argued that the ALJ provided the VE with an
     incomplete hypothetical. *Terry*, 998 F.3d at 1014 ("For the reasons stated above, we agree with the district court that
     the ALJ's question to the vocational expert concerning a hypothetical individual was not incomplete.") But this is not
28   the issue raised by Plaintiff in this case.

1    Cal. May 20, 2015) ("[P]laintiff has cited to no authority for the proposition that an ALJ is bound

2    by the OOH."); *Gandara v. Berryhill*, 2017 WL 4181091, at *5 (E.D. Cal. Sept. 20, 2017)

3    ("[P]laintiff fails to provide authority for the proposition that an ALJ must *sua sponte* identify and

4    take administrative notice of the educational requirements in the OOH, compare them with the

5    VE's hearing testimony, and determine any inconsistencies."). While the Court is not bound by

6    these cases, the Court acknowledges that, in this case, Plaintiff cites to the Social Security

7    Administration's decision to replace the DOT, which it concedes is outdated because it has not

8    been updated since at least 1991,[13] with the new Occupational Information System ("OIS")

9    Project,[14] "as the primary source of occupational information SSA staff use in our disability

10   adjudication process." ECF No. 17 at 8 (citing

11   https://www.ssa.gov/disabilityresearch/occupational_info_systems.html). And, according to the

12   Agency, the OIS will "incorporate data from other government surveys" like the OOH and

13   O*NET. *Id*. The Court finds Plaintiff's argument persuasive.

14          In other cases, district courts have rejected a plaintiff's assessment of raw vocational data

15   because it "was unaccompanied by any analysis or explanation from a vocational expert or other

16   expert source to put the raw data into context." *Valenzuela v. Colvin*, 2013 WL 2285232, at *4

17   (C.D. Cal. May 23, 2013). Here, Plaintiff cites to the Social Security Administration's decision to

18   direct its staff to rely on the data provided by sources like the OOH and O*NET to make accurate

19   occupational findings. The Court finds Plaintiff's reasoning persuasive.

20          Finally, while testimony of a qualified VE can constitute substantial evidence, the Ninth

21   Circuit has been receptive to an "implausibility" argument. *Cymande S. v. Berryhill*, No. CV 18-

22   1448 FFM, 2019 WL 4148351, at *2 (C.D. Cal. May 16, 2019) (citing *Farias v. Colvin*, 519 Fed.

23   App'x 439, 440 (9th Cir. 2013) ("No 'reasonable mind' could accept the employment numbers

24   proffered by the VE . . . . "). Here, no reasonable mind could logically accept that an individual

25

26          [13] Of note, while the DOT has not been updated since 1991, some jobs identified in the DOT have not been
27   updated since the 1980s (or even earlier). For example, the mail clerk position was last updated in 1987 whereas the
     ticket taker and locker room attendant positions were lasted updated in 1980 and 1981, respectively.
            [14] The Court will also note that it appears that the case law in this area of Social Security law has not caught
28   up with the new and emerging regulations.

1   who is limited to brief, superficial contact with others can perform jobs that require constant

2   interactions with others for the majority, if not, the entire eight-hour workday.

3          In short, as discussed above, the Court finds that the ALJ's step-five finding is not

4   supported by substantial evidence and, therefore, remand for further proceedings is necessary. On

5   remand, the ALJ must resolve the conflict between the VE's testimony and the data provided in

6   the OOH and O*NET.

7   **III.     CONCLUSION AND ORDER**

8          **IT IS ORDERED** that Plaintiff's motion to remand (ECF No. 17) is **GRANTED**.

9          **IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm and

10  response to Plaintiff's motion to remand (ECF Nos. 18, 19) is **DENIED**.

11         **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this

12  case.

13

14         DATED: February 2, 2022.

15                                                  _____

16                                                  BRENDA WEKSLER
                                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28