UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Justine B., | Case No. 2:20-cv-01734-BNW |
| Plaintiff, | |
| v. | **ORDER re ECF No. 23** |
| Kilolo Kijakazi, | |
| Defendant. | |

Plaintiff Justine B.[1] sought Social Security benefits for physical and mental impairments. ECF No. 15-1 at 168–78. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. ECF No. 1. On March 1, 2022, the Court granted Plaintiff's motion to remand, denied the Commissioner's countermotion to affirm, and remanded for further proceedings. ECF No. 21. The Commissioner now moves to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 23. Plaintiff opposed at ECF No. 24, and the Commissioner replied at ECF No. 25.

For the reasons discussed below, the Court grants in part and denies in part the Commissioner's motion.

**I.     Legal Standard**

Fed. R. Civ. P. 59(e) provides that a party may file a "motion to alter or amend a judgment" within "28 days after the entry of the judgment." Because "specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.

---
[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)). However, the Court identified "four basic grounds" upon which a motion under Rule 59(e) may be granted:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Id.*

On the other hand, dissatisfaction with an order or a belief that the court was wrong in its decision are not adequate grounds for relief. *See Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981). The purpose of a Rule 59(e) motion is not "to give an unhappy litigant one additional chance to sway the judge." *Kilgore v. Colvin*, 2013 WL 5425313 at *1 (E.D. Cal. Sept. 27, 2013) (quoting *Frito-Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 390 (D.P.R. 1981)). Rather, as the Ninth Circuit has explained, a motion under Rule 59(e) is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) (citations omitted); *see also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 980 (9th Cir. 2000) (citation omitted).

**II.     Discussion**

The Court previously remanded this matter for further proceedings because it found that the ALJ's step-five finding was not supported by substantial evidence. ECF No. 21 at 13.

The Commissioner seeks to have the Court alter judgment pursuant to Fed. R. Civ. P. 59(e), arguing that the Court committed clear error by not applying the secondary holding in *Terry v. Saul*, 998F.3d 1010 (9th Cir. 2021), cert. denied sub nom. *Terry v. Kijakazi*, No. 21-665, 2022 WL 89345 (U.S. Jan. 10, 2022). ECF No. 23 at 1. The Court agrees. In a footnote in its prior order, the Court interpreted *Terry*'s holding to be limited to whether the Administrative Law Judge provided the vocational expert with an incomplete hypothetical by not defining "medium work." ECF No. 21 at 13 n.12. However, the Court recognizes that the *Terry* court also found that the vocational expert's opinion regarding the plaintiff's ability to perform jobs existing in significant numbers in the national economy did not "necessarily establish either legal error or a

lack of substantial evidence to support the ALJ's disability determination" despite conflicting data from sources other than the Dictionary of Occupational Titles. *Terry*, 998 F.3d at 1013.

However, even when applying *Terry*'s secondary holding to the facts in this case, the Court continues to find that substantial evidence does not support the ALJ's step-five findings, as the ALJ had a duty to resolve the conflict between the vocational expert's job estimates (178,000 jobs) and those provided by the Plaintiff to the Appeals Council using data from the Occupational Outlook Handbook and O*NET (13,466 jobs). *See White v. Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022); *see also Perkins v. Kijakazi*, No. 21-35730, 2022 WL 3585587, at *2 (9th Cir. Aug. 22, 2022) ("Because the Appeals Council chose to make this new [job-numbers] evidence part of the administrative record, *see* 20 C.F.R. § 404.970(b), the agency was bound to address and resolve the conflict between [the plaintiff's] job-numbers estimates and the 2011 [vocational expert's] estimates.").

Accordingly, the Court grants the Commissioner's motion to the extent that it finds it should have applied *Terry*'s secondary holding but denies it to the extent that the Commissioner requests the Court to affirm the ALJ's decision as a result of applying *Terry*'s secondary holding. The Court further vacates its prior order (ECF No. 21), sustains the judgment remanding this matter for further proceedings (ECF No. 22), and issues the following amended order.

DATED: May 18, 2023.

                                                    BRENDA WEKSLER
                                                    UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Justine B., | Case No. 2:20-cv-01734-BNW |
| Plaintiff, | |
| v. | **ORDER re ECF Nos. 17 and 18** |
| Kilolo Kijakazi,* | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Justine B.'s application for supplemental security income under Title XVI of the Social Security Act.[2] The Court reviewed Plaintiff's motion to remand (ECF No. 17), the Commissioner's countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos. 18, 19), and Plaintiff's reply (ECF No. 20).

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on September 18, 2020. ECF No. 3. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id*.

**I.   Background**

   **1.   Procedural History**

On February 2, 2017, Plaintiff applied for supplemental security income under Title XVI of the Act, alleging an onset date of February 1, 2008.[3] ECF No. 15-1[4] at 168–78. Her claim was denied initially and on reconsideration. *Id*. at 97–100; 104–09.

---

* Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

[2] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

[3] The ALJ decision provides an application date of February 6, 2017 and an alleged onset date of February 1, 2008. ECF No. 15-1 at 24.

[4] ECF No. 15 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. Notice of Electronic Filing (ECF No. 15). All citations to the Administrative Record will use the CM/ECF page numbers.

A hearing was held before an Administrative Law Judge ("ALJ") on October 3, 2019, where the ALJ heard testimony from vocational expert Erick Davis. *Id*. at 46–62. On December 5, 2019, ALJ Christopher R. Daniels issued a decision finding that Plaintiff was not disabled. *Id*. at 21–41. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on July 20, 2020. *Id*. at 6–11. Plaintiff, on September 18, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* Compl. (ECF No. 1).

**II.    Discussion**

    **1.    Standard of Review**

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at

any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 416.920(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id*. If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 416.920(a)(4)(iv); *see also* SSR 96-8p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 416.920(a)(4)(iv). If the individual has the RFC to

perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If she is able to do other work, then a finding of not disabled is made. The Commissioner bears the burden to show that a claimant is not disabled because she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). The Ninth Circuit has not set a bright-line rule defining a minimum number of jobs that constitutes a "significant number" for purposes of step-five findings but suggests that "a comparison to other cases is instructive" for that purpose. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. ECF No. 15-1 at 25–41.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 6, 2017. *Id*. at 26.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: anxiety, bipolar disorder, and fibromyalgia. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically citing to 12.04, 12.06, and 14.09. *Id*. at 26–27.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform "light" work with the following exceptions: She is able to lift and carry no more than ten pounds, frequently, and twenty pounds, occasionally; she is able to sit for six hours, cumulatively, in an eight-hour workday; she is able to stand and/or walk for six hours, cumulatively, in an eight-hour workday; she is able to perform simple, routine, repetitive tasks; she is able to tolerate brief, superficial contact with others; and she is able to adapt to routine work changes. *Id*. at 27.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a graphic designer because "it exceeds her mental residual functional capacity." *Id*. at 40.

At step five, the ALJ relied on the vocational expert's testimony to find that Plaintiff could perform other jobs that exist in significant numbers, namely as a locker room attendant, mail clerk, and ticket taker. *Id*. at 40–41. The ALJ then concluded that Plaintiff was not under a disability at any time from February 6, 2017, through the date of his decision. *Id*.

### 3. Analysis

#### a. Whether substantial evidence supports the ALJ's step-five findings

#### i. The ALJ's decision

At step five of the sequential evaluation process, the ALJ found that Plaintiff could perform work as a locker room attendant, mail clerk, and ticket taker. ECF No. 15-1 at 40–41. He based this determination on testimony from the vocational expert ("VE"), the Dictionary of Occupational Titles ("DOT"),[5] and Plaintiff's RFC, age, education, and work experience, and found that,

> [a]lthough a portion of the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles (DOT), there is a reasonable explanation for the discrepancy. He testified with respect to lying down and absenteeism in the workday, based on his professional knowledge, experience, and employer interviews. The undersigned finds that the vocational expert's testimony is otherwise consistent with the DOT and its companion publication, Selected Characteristics of Occupations."

*Id*. at 41.

#### ii. The parties' arguments

Plaintiff moves to remand, arguing that the ALJ did not meet his burden at step five of the sequential evaluation process, as the jobs that the ALJ found Plaintiff could perform "do not exist in significant numbers." ECF No. 17 at 5. As a preliminary matter, Plaintiff first contends that because "the rebuttal evidence was submitted to and considered by the Appeals Council, the vocation issues have not been waived." ECF No. 17 at 9. She then asserts that the three jobs that

---

[5] Although the DOT has not been updated since 1991, some jobs identified in the DOT have not been updated since the 1980s (or even earlier). For example, the mail clerk position was last updated in 1987 whereas the ticket taker and locker room attendant positions were lasted updated in 1980 and 1981, respectively. The Ninth Circuit and other circuit courts have problematized the outdated DOT system. *See White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) ("We join our sister circuits in encouraging the SSA to make the transition to a system that more accurately reflects available jobs in the current economy.").

1  the ALJ determined Plaintiff could do—locker room attendant, mail clerk, and ticket taker—
2  exceed the amount of contact with people contemplated by Plaintiff's RFC limitation ("tolerate
3  brief, superficial contact with others"). *Id*. Plaintiff relies on data from the Occupational Outlook
4  Handbook ("OOH") and O*NET to support her argument. *Id*. at 6–8.

   The Commissioner counters that Plaintiff waived this argument by not raising it before the
   ALJ. ECF No. 18 at 7. Although she concedes that Plaintiff raised this argument "for the first
   time to the Appeals Council[,]" she argues that "raising the vocational issues here for the first
   time to the Appeals Council did not preserve the issue for judicial review under existing Circuit
   precedent . . . ." *Id.* at 7, 10. She further argues that even if the Court were to find that Plaintiff
   had not waived this argument, the Court should, nonetheless, find that substantial evidence
   supports the ALJ's step-five findings. *Id*. at 11, 14. According to the Commissioner, Plaintiff's
   challenges to the job data rely on O*NET, which is not a source of job information that the ALJ
   can take administrative of, though she concedes that Plaintiff's other source—the Occupational
   Outlook Handbook—qualifies as such a source. *Id*. at 11.

   Plaintiff replies that while challenging a vocational expert's findings "in court is too
   late[,]" doing so before the Appeals Council is "permitted." ECF No. 20 at 3.

### iii. Whether Plaintiff waived the argument that substantial evidence does not support the ALJ's step-five findings

   Before addressing Plaintiff's argument on the merits, the Court first must determine
   whether, as the Commissioner argues, Plaintiff waived this argument.

   In *Shaibi v. Berryhill*, the Ninth Circuit held that "a claimant must, at a minimum, raise
   the issue of the accuracy of the expert's estimates at *some point during the administrative
   proceedings* to preserve the challenge on appeal in federal district court." 883 F.3d 1102, 1103
   (9th Cir. 2017) (emphasis added).[6] As the appellate court repeatedly emphasized, the plaintiff in
   *Shaibi* did not challenge the accuracy of the vocational expert's findings before *either* the ALJ *or*
   the Appeals Council. *Id*. at 1108–10. Rather, Plaintiff raised this argument for the *first* time on

---

[6] Notably, the *Shaibi* court used the more expansive language of "administrative *proceedings*" rather than the more limiting language of requiring a claimant to raise an issue before *only* the ALJ in order to avoid forfeiture.

1  appeal in federal district court. *Id*. Accordingly, the facts from *Shaibi* are different from those present in the instant case.

Here, Plaintiff raised her challenge to the VE's findings and the ALJ's adoption of these findings before the Appeals Council and, thus, raised the issue "at some point during the administrative proceedings." *See* ECF No. 15-1 at 310–36. Specifically, the Court notes that Plaintiff's brief to the Appeals Council addressed the arguments Plaintiff now raises. *Compare id. with* ECF No. 17 at 5–9. Additionally, the Appeals Council considered and made part of the administrative record Plaintiff's argument and her supporting evidence. *See id.* at 6 ("We considered the reasons and exhibited them on the enclosed Order of the Appeals Council."), 9 (provides a list of the documents exhibited by the Appeals Council).

Accordingly, the Court finds that Plaintiff did not waive this argument because she raised the issue to the Appeals Council during the administrative proceedings.[7] *See Shaibi*, 883 F.3d at 1109 ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers [based on an alleged conflict with alternative job numbers obtained from the County Business Patterns or the Occupational Outlook Handbook] *during administrative proceedings before the agency*, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.") (emphasis added); *see also Shawn P. v. Kijakazi*, No. 20CV1054-MSB, 2021 WL 4460646, at *10 (S.D. Cal. Sept. 29, 2021) ("[T]his Court finds that to the extent Plaintiff submitted his arguments and evidence to the Appeals Council, he has not waived his jobs-numbers arguments."); *see also Gonzalez v. Saul*, 833 F. App'x 464, 465 (9th Cir. 2021) (citing *Shaibi*, 883 F.3d at 1109) ("Failure to raise the claim before either the ALJ or the Appeals Council results in forfeiture of the argument.").[8]

---

[7] This is so even though Plaintiff was represented by the same counsel at the ALJ hearing and did not challenge the VE's findings before the ALJ or even question the VE on his findings. *See Shaibi*, 883 F.3d at 1109.

[8] There are a number of other holdings in this district that support the Court's finding that a plaintiff does not waive or forfeit the presented issue if she—at the least—first presented it to the Appeals Council. *See, e.g., Albritten v. Berryhill*, No. CV 17-0925-JPR, 2018 WL 3032860, at *3 (C.D. Cal. June 14, 2018) (citing *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017)) ("Issues raised to the Appeals Council but not to the ALJ are not forfeited."); *Ross v. Comm'r Soc. Sec. Admin.*, No. 6:16-cv-00903-AA, 2018 WL 263639, at *2 (D. Or. Jan 2, 2018) ("*Lamear* stands for the proposition that the failure to raise an issue at the hearing can be remedied by raising it to the Appeals Council."). The Court will further note that the *Meanel* holding to which the Commissioner cites as authority to argue that Plaintiff forfeited her argument by not raising it before the ALJ also provides that forfeiture or waiver will be excused "when necessary to avoid a manifest injustice." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

**iv. Whether substantial evidence supports the ALJ's step-five findings**

Plaintiff's only argument for remand is that the ALJ erred at step five. ECF No. 17 at 5. According to Plaintiff, the ALJ relied on the vocational expert's testimony to conclude that she could perform alternate jobs that exist in significant numbers in the economy. However, Plaintiff argues that she cannot perform these alternate jobs because each of the identified three positions requires more than brief, superficial contact with others and, thus, exceeds her RFC. *Id*. at 5–7.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work despite her identified limitations, and that (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389; *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Circ. 2015). While the Ninth Circuit has not established a minimum or bright-line number of jobs that constitutes a "significant" number, it did hold in *Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 528–29 (9th Cir. 2014) that 25,000 jobs in the national economy, while a close call, amounts to a significant number of jobs. Finally, the ALJ's step-five finding, like all findings under review by the district court, must be supported by substantial evidence in the overall record to be affirmed. *See Bayliss,* 427 F.3d at 1214 n.1 (*citing Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

Here, Plaintiff appealed the ALJ's decision to the Appeals Council, arguing that the ALJ "failed to sustain his burden at step five of the sequential evaluation." ECF No. 15-1 at 311. Plaintiff made similar arguments in both her brief to the Appeals Council and in the instant motion to remand, arguing that she is unable to perform the three jobs identified by the vocational expert (i.e., locker room attendant, mail clerk, and ticket taker) because her RFC limits her to "brief, superficial contact with others" and these identified jobs require more contact than permitted as evidenced by OOH and O*NET data. *Id*.; *see also* ECF No. 17 at 5–8. The Appeals

---

Because the Court finds that substantial evidence does not support the ALJ's step-five finding, holding that Plaintiff waived her argument on an alleged technicality (i.e., by only presenting it to the Appeals Council) would amount to a manifest injustice.

Council made Plaintiff's new job-numbers evidence part of the administrative record. *See* ECF No. 15-1 at 6 ("We considered the reasons and exhibited them on the enclosed Order of the Appeals Council."), 9 (provides a list of documents exhibited by the Appeals Council). Accordingly, the Court must consider this evidence that the Appeals Council made part of the administrative record. *See Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citation omitted) ("[W]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); *see also Wischmann v. Kijakazi*, No. 21-35914, 2023 WL 3488107, at *4 (9th Cir. May 17, 2023) (quoting *Brewes*, 682 F.3d at 1163) ("Because the Appeals Council accepted [the plaintiff's] new evidence, it became 'part of the administrative record, which the district court [and we] must consider.'").

The Court now turns to whether the Agency should have resolved the conflict between the VE's testimony and Plaintiff's job estimates that were produced using data from the *Occupational Outlook Handbook* ("OOH") and O*NET.

The Regulations provide that when the Social Security Administration "determine[s] that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where [the claimant] live[s] or in several regions of the country), [the Agency] will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1566(d). The Regulations provide some—though not all—examples of publications of which the Agency will take administrative notice. *Id*. ("For example, we will take notice of—*Dictionary of Occupational Titles*, published by the Department of Labor; *County Business Patterns*, published by the Bureau of the Census; *Census Reports*, also published by the Bureau of the Census; *Occupational Analyses*, prepared for the Social Security Administration by various State employment agencies; and *Occupational Outlook Handbook*, published by the Bureau of Labor Statistics.").

The plain language of the Regulations is instructive for several reasons. First, it makes clear that the Agency will take administrative notice of "reliable" job information. *See id.* Second,

it indicates that the enumerated sources of reliable job information are not an exclusive list but, rather, simply a few examples of the types of publications of which the Agency will take administrative notice. *See id.* ("*For example*, we will take notice of . . . .) (emphasis added). And finally, it reveals that the sources of reliable job information are not limited to governmental publications. *See id.* ("various governmental and *other* publications") (emphasis added).

Here, Plaintiff presented evidence to the Appeals Council, which the Appeals Council made part of the administrative record, suggesting that 97 percent of the 136,400[9] nationally available ticket taker jobs, 91 percent of the 90,100[10] nationally available mail clerk jobs, and 91 percent of the 15,500[11] nationally available locker room attendant jobs likely exceed her RFC limitation of having "brief, superficial contact with others." ECF No. 17 at 6-7, ECF No. 15-1 at 27. This is because, according to O*NET data, each of these jobs require "contact with others *constantly* or *most of the time*." ECF No. 17 at 6–7 (emphasis added). The ALJ, however, found that Plaintiff was limited to only *brief* and superficial contact with others. ECF No. 15-1 at 27.

As outlined above, the Regulations provide that the Agency will take administrative notice of enumerated and non-enumerated governmental and other publications that provide "reliable job information." 20 C.F.R. § 404.1566(d). One of these enumerated publications is the *Occupational Outlook Handbook* ("OOH"), which Plaintiff relies upon to provide the number of nationally available jobs for each of the three jobs that the ALJ found that she could perform.[12]

---

[9] Plaintiff relies on the *Occupational Outlook Handbook (*"OOH") in determining how many nationally available ticket taker jobs there are. According to the OOH, the 136,400 figure includes ushers, lobby attendants, and ticket takers. At the hearing before the ALJ, the VE testified that there are 84,000 nationally available ticket taker jobs. ECF No. 15-1 at 60.

[10] Plaintiff relies on the OOH in determining how many nationally available mail clerk jobs there are. According to the OOH, the 90,100 figure includes mail clerks and mail machine operators but excludes post service positions. At the hearing before the ALJ, the VE testified that there are 74,000 nationally available mail clerk jobs. ECF No. 15-1 at 60.

[11] Plaintiff relies on the OOH in determining how many nationally available locker room attendant jobs there are. According to the OOH, the 18,500 figure includes locker room, coatroom, and dressing room attendants. At the hearing before the ALJ, the VE testified that there are 20,000 nationally available locker room attendant jobs. ECF No. 15-1 at 60. Furthermore, the Court recognizes that the number of nationally available locker room attendant jobs may not constitute a "significant" number, as the figures provided by both the VE and the OOH indicate nationally available jobs that are at least 5,000 fewer than the 25,000 jobs that the Ninth Circuit held constituted a "significant" number despite being a "close call[.]" *Gutierrez v. Colvin*, 740 F.3d 519, 529 (9th Cir. 2014).

[12] Of note, the OOH figures are larger for two of the three jobs. This means that, under the OOH, the number of nationally available ticket taker and mail clerk positions is higher than the figures presented by the VE and relied upon by the ALJ in his step-five findings. The Court raises this point to show that even when relying on the higher OOH figures, the ALJ's step-five findings are not supported by substantial evidence, as discussed within this Order.

The other source that Plaintiff relies on—the O*NET—is not an enumerated source but is one that would qualify as a *governmental* publication of *reliable* job information. As Plaintiff explains, the O*NET is sponsored by the U.S. Department of Labor's Employment & Training Administration, which is the same governmental entity that sponsored the DOT. ECF No. 17 at 8. And, as Plaintiff further notes, the website for ALJs (not just those presiding over Social Security cases) provides the following advice: "The O*Net is now the primary source of occupational information . . . . **Thus, if you are looking for current occupational information you should use the O*Net**." *Id.* (citing U.S. Department of Labor, Dictionary of Occupational Titles – Fourth Edition, Revised 1991, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT) (bolded language in original).

The evidence that Plaintiff submitted to the Appeals Council indicates that there are fewer than 14,000 jobs nationally that she could perform. This is because, when relying on the OOH and O*NET data and Plaintiff's RFC limitation of having only brief and superficial contact with others, there are only 3,692 ticket taker jobs, 8,109 mail clerk jobs, and 1,665 locker room attendant jobs nationally available that do not require interacting with others "constantly or most of the time." This creates a vast discrepancy between the VE's job numbers (178,000 jobs) and those provided by Plaintiff (13,466 jobs). And because the Agency is required to take administrative notice of OOH data and other reliable job information available from various governmental and other publications like the O*NET, it should have resolved the conflict between Plaintiff's job-numbers estimates obtained from these sources and the VE's estimates. *See* 20 C.F.R. § 404.1566(d); *see also Harris v. Berryhill*, No. 5:17-CV-02204-SHK, 2018 WL 3493778, at *6 (C.D. Cal. July 20, 2018); *see also Perkins v. Kijakazi*, No. 21-35730, 2022 WL 3585587, at *2 (9th Cir. Aug. 22, 2022) ("Because the Appeals Council chose to make this new [job-numbers] evidence part of the administrative record, *see* 20 C.F.R. § 404.970(b), the agency was bound to address and resolve the conflict between [the plaintiff's] job-numbers estimates and the 2011 [vocational expert's] estimates.").

Additionally, the Ninth Circuit has held that an ALJ must resolve job-number inconsistencies "if the 'competing job numbers . . . constitute significant probative evidence.'"

*White v. Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022)) (explaining that courts must consider whether there is "support for [a claimant's] counsel's approach" in generating job-number estimates in determining whether new evidence is significant and probative). The Ninth Circuit explained that "[t]o engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis." *Kilpatrick*, 35 F.4th at 1193.

Here, the conflicting evidence Plaintiff submitted to the Appeals Council was "probative" and "significant." It was probative in that it used a data source that the Social Security Administration takes administrative notice of (OOH) and another data source that the SSA relies on as providing the most current occupational information (O*NET). *See White*, 44 F.4th at 836 (quoting *Kilpatrick*, 35 F.4th at 1194) (explaining that courts "must consider whether there is 'support for [a claimant's] counsel's approach' in generating job-number estimates in determining whether new evidence is significant and probative"). And the conflicting evidence was significant, as it revealed a vast discrepancy between the VE's job estimates (178,000 jobs) and those provided by Plaintiff (13,466 jobs). If the Appeals Council had credited Plaintiff's estimates regarding the number of jobs in the national economy provided by the OOH and O*NET, "there is a reasonable probability that the outcome of h[er] proceeding may have been different." *White*, 44 F.4th at 837.

The Commissioner argues that *Terry v. Saul* "forecloses" Plaintiff's argument. ECF No. 18 at 13 (citing *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2021), *cert. denied sub nom. Terry v. Kijakazi,* No. 21-665, 2022 WL 89345 (U.S. Jan. 10, 2022)). However, as the Ninth Circuit has explained, "although VE testimony is 'inherently reliable,' it is 'not incontestable.'" *Kilpatrick,* 35 F.4th at 1193 (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017)). Thus, because Plaintiff provided the Appeals Council with conflicting job-number evidence of significant probative value, the Agency had a duty to resolve this conflict.[13] *See Wischmann*, 2023 WL

---

[13] The Court briefly addresses other district court cases where the courts have held that the ALJ is not bound to *sua sponte* resolve conflicts between the VE's testimony and databases like the OOH or O*NET, as this is a key argument raised by the Commissioner. In many of these cases, the district courts hold that the plaintiff failed to cite any authority to support that the ALJ must *sua sponte* resolve conflicts between the VE's testimony and databases like the OOH or O*NET. *See, e.g., Palomino v. Colvin*, 2015 WL 2409881, at *6 (C.D. Cal. May 20, 2015)

Page 16 of 18

3488107, at *6 (quoting *Kilpatrick*, 35 F.4th at 1193) ("[T]o determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), we consider on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value.").

Finally, as noted above, although a qualified VE's testimony can constitute substantial evidence, the Ninth Circuit has been receptive to an "implausibility" argument. *Cymande S. v. Berryhill*, No. CV 18-1448 FFM, 2019 WL 4148351, at *2 (C.D. Cal. May 16, 2019) (citing *Farias v. Colvin*, 519 Fed. App'x 439, 440 (9th Cir. 2013) ("No 'reasonable mind' could accept the employment numbers proffered by the VE . . . . "). Here, no reasonable mind could logically accept that an individual who is limited to brief, superficial contact with others can perform jobs that require constant interactions with others for the majority, if not, the entire eight-hour workday.

In short, the Court finds that the ALJ's step-five finding is not supported by substantial evidence and, therefore, remand for further proceedings is necessary. *See White*, 44 F.4th at 837; *see also Harris*, 2018 WL 3493778, at *6. On remand, the ALJ must resolve the conflict between the VE's job-numbers estimate and Plaintiff's job-numbers estimate derived from OOH and O*NET data. Additionally, during these proceedings, the parties should be permitted to submit additional evidence regarding the number of jobs available that Plaintiff could perform. *Perkins*, 2022 WL 3585587, at *2.

//

---

("[P]laintiff has cited to no authority for the proposition that an ALJ is bound by the OOH."); *Gandara v. Berryhill*, 2017 WL 4181091, at *5 (E.D. Cal. Sept. 20, 2017) ("[P]laintiff fails to provide authority for the proposition that an ALJ must *sua sponte* identify and take administrative notice of the educational requirements in the OOH, compare them with the VE's hearing testimony, and determine any inconsistencies."). While the Court is not bound by these cases, the Court acknowledges that, in this case, Plaintiff does cite to authority, namely the SSA's decision to replace the DOT, which it concedes is outdated because it has not been updated since at least 1991, with the new Occupational Information System ("OIS") Project, "as the primary source of occupational information SSA staff use in our disability adjudication process." ECF No. 17 at 8 (citing https://www.ssa.gov/disabilityresearch/occupational_info_systems.html). And, according to the Agency, the OIS will "incorporate data from other government surveys" like the OOH and O*NET. *Id*. In other cases, district courts have rejected a plaintiff's assessment of raw vocational data because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context." *Valenzuela v. Colvin*, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013). Here, Plaintiff cites to the SSA's decision to direct its staff to rely on the data provided by sources like the OOH and O*NET to make accurate occupational findings. The Court finds Plaintiff's reasoning persuasive.

### III. Conclusion and Order

**IT IS THEREFORE ORDERED** that Plaintiff Justine B.'s motion to remand (ECF No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos. 18, 19) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this case.

DATED: May 18, 2023.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE